UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| In re David W. Frueh, | Bankruptcy No. 14-B-81029 |
| | Chapter 7 |
| Debtor. | |
| | Judge Lynch |

## MEMORANDUM OPINION

This matter comes before the Court on the Chapter 7 Trustee's objection to Debtor's claim of exemptions. For the reasons set forth herein, the Trustee's objection will be sustained and Debtor's claim of exemption of $7,989 in 2013 tax refunds pursuant to 735 ILCS 5/12-1001(g)(1) will be disallowed.

## JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

## FACTUAL AND PROCEDURAL BACKGROUND

The material facts are not in dispute. The Debtor filed a petition under Chapter 7 of the Bankruptcy Code on March 31, 2014. David Freuh is married, but his wife did not file for bankruptcy protection. Mr. and Ms. Freuh filed a joint federal tax return for 2013 and received a federal tax refund of $10,054.00 on or about March 4, 2014. David did not initially disclose the tax refund in his bankruptcy schedules, but filed an amended Schedule B and C on April 30, 2014, two days after the 341 meeting of creditors. The Amended Schedule B added at least a portion of the tax refunds, describing them as "2013 Tax Refund (Earned Income Credit) -

Page 1 of 10

$4,989.00; 2013 Tax Income Refund (Child Care Credit) - $3,000."[1] The Debtor's Amended Schedule C added the same refund amounts with the same descriptions and claimed this $7,989 portion of the tax refund as fully exempt under 735 ILCS 5/12-1001(g)(1).

The Chapter 7 Trustee filed an objection to the amended claim of exemption on June 5, 2014, objecting that because the Debtor received the refund before the petition date the exemption asserted did not apply. The Debtor filed a written response and the court heard lengthy argument on the Trustee's objection.

## DISCUSSION

1. <u>The Statute</u>.

Pursuant to Fed. R. Bankr. P. 4003(c) the objecting party bears the burden of proving that exemptions are not properly claimed. The Trustee does not dispute that Illinois is the Debtors' proper domicile or that the statutory exemptions provided under Illinois law apply. Nor does she dispute that the earned income and child tax credits at issue here constitute "public assistance benefits" under the Illinois exemption the Debtors have claimed. 735 ILCS 5/12-1001(g)(1). *See, e.g., In re Austin*, 2014 WL 3695370, (Bankr. C.D. Ill. July 24, 2014); *In re Royal*, 397 B.R. 88, 102 (Bankr. N.D. Ill. 2008). Instead, the Chapter 7 Trustee objects on the grounds that 735 ILCS 5/12-1001(g)(1) does not provide an exemption for payments already received or proceeds thereof.

> 735 ILCS 5/12-1001(g)(1) provides an exemption for:
>
> (g) The debtor's right to receive:
> (1) a social security benefit, unemployment compensation, or public assistance
>     benefit;
> (2) a veteran's benefit;
> (3) a disability, illness, or unemployment benefit; and
> (4) alimony, support, or separate maintenance, to the extent reasonably necessary
>     for the support of the debtor and any dependent of the debtor.

---

[1] The parties have not explained to the court what happened to the remaining $2,065 portion of the tax refund.

735 ILCS 5/12-1001(g)(1). The Trustee argues that, by referring only to a debtor's "right to receive" payment, the statute clearly applies only to rights to future payments and not to funds already received or other proceeds of such rights. In particular, she argues that this plain meaning is even more clear when compared to the next subsection in the statute. Section 12-1001(h) provides an exemption for:

> (h) The debtor's right to receive, *or property that is traceable to*:
>   (1) an award under a crime victim's reparation law;
>   (2) a payment on account of the wrongful death of an individual of whom the debtor was a dependent, to the extent reasonably necessary for the support of the debtor;
>   (3) a payment under a life insurance contract that insured the life of an individual of whom the debtor was a dependent, to the extent reasonably necessary for the support of the debtor or a dependent of the debtor;
>   (4) a payment, not to exceed $15,000 in value, on account of personal bodily injury of the debtor or an individual of whom the debtor was a dependent; and
>   (5) any restitution payments made to persons pursuant to the federal Civil Liberties Act of 1988 and the Aleutian and Pribilof Island Restitution Act, P.L. 100-383.
>
> For purposes of this subsection (h), a debtor's right to receive an award or payment shall be exempt for a maximum of 2 years after the debtor's right to receive the award or payment accrues; *property traceable to an award or payment shall be exempt for a maximum of 5 years after the award or payment accrues*; and an award or payment and property traceable to an award or payment shall be exempt only to the extent of the amount of the award or payment, without interest or appreciation from the date of the award or payment.

735 ILCS 5/12-1001(h) (emphasis added). The Debtor argues that the statute is ambiguous as to whether it applies to proceeds of a public assistance benefit and that exemption statutes should be broadly construed to protect debtors.

2. <u>Subsection 12-1001(g) Does Not Apply to Traceable Proceeds.</u>

In answering a question of state law where the highest court in the state has not spoken, a federal court "must attempt to predict how [it believes] that court would decide" and may "look to decisions of intermediate appellate courts in the state for persuasive guidance in that

endeavor." *Abstract & Title Guar. Co. v. Chicago Ins. Co.*, 489 F.3d 808, 811 (7th Cir. 2007). According to the Illinois Supreme Court, the primary goal of statutory construction "is to ascertain and give effect to the intention of the legislature." *Home Star Bank & Fin. Servs. v. Emergency Care & Health Org., Ltd.*, 6 N.E.3d 128, 134-35 (Ill. Mar. 20, 2014). The best indication of legislative intent "is the statutory language, which must be given its plain and ordinary meaning," but "if the meaning of an enactment is unclear from the statutory language itself, the court may look beyond the language employed and consider the purpose behind the law and the evils the law was designed to remedy, as well as other sources such as legislative history." 6 N.E.3d at 135.

The Illinois Supreme Court has not ruled on whether 735 ILCS 5/12-1001(g)(1) exempts the traceable proceeds of property included within that exemption. However, at least three Illinois appellate courts have ruled that it does not. After comparing subsections (g) and (h), the Illinois appellate court in *Fayette County Hosp. v. Reavis* concluded that the Illinois legislature intended only to exempt the right to receive social security benefits and not payments already received or traceable to such benefits. 523 N.E.2d 693, 695 (Ill. App. Ct. 1988). In *Internal Medicine Assocs. of Decatur, S.C. v. Patterson*, the court cited *Reavis* in holding that subsection (g) does "not exempt property which was traceable" to veteran's benefits. 613 N.E.2d 1, 3 (Ill. App. Ct. 1993). Most recently, the appellate court in *In re Marriage of Pope-Clifton* cited *Reavis* and *Patterson* to hold that "funds traceable to either social security benefits or veterans' benefits are not exempt under section 12-1001." 823 N.E.2d 607, 609 (Ill. App. Ct. 2005).

Virtually all bankruptcy courts and other federal courts to have addressed the issue have cited *Reavis* and held that Section 12-1001(g) applies only to rights to receive future payments and does not apply to funds already received prepetition or to proceeds thereof. *See In re*

*Austin*, 2014 WL 3695370 *2 (Bankr. C.D. Ill. July 24, 2014) (federal and state tax refunds attributable to the Earned Income Credit and the Additional Child Tax Credit received postpetiton are not covered by public assistance benefits exemption found at 735 ILCS 5/12-1001(g)(1)). *See also In re Austin,* 2014 WL 3695370 (Bankr. C.D. Ill. July 24, 2014); *In re Franklin*, 506 B.R. 765, 768 (Bankr. C.D. Ill. Mar. 12, 2014) ("the state law exemption is limited to a debtor's 'right to receive' a social security benefit and does not protect benefits which the debtor received and placed in a bank account prior to the filing of bankruptcy"); *In re Russell*, 2013 WL 4591985 (Bankr. C.D. Ill. Aug. 28, 2013) (objection to claim of exemption under Section 12-1001(g)(1) for Earned Income Credit and Additional Child Tax Credit sustained where received prepetition); *In re McQuaid*, 492 B.R. 514 (Bankr. N.D. Ill. 2013); *In re Irwin*, 371 B.R. 344 (Bankr. C.D. Ill. 2007) (exemption for workers' compensation settlement did not extend to vehicle purchased with proceeds); Most notably, the Seventh Circuit has stated that section 12-1001(g) exempts "'[t]he debtor's right to receive' public benefits; it has nothing to do with funds on deposit long after their receipt and commingling with the debtor's other assets. See also Like the anti-alienation clauses in the federal benefits statutes themselves, this law ensures that recipients enjoy the minimum monthly income provided by the benefits laws; it does not entitle recipients to shield hoards of cash." *In re Schoonover*, 331 F.3d 575, 577 (7th Cir. 2003).

3. <u>The Narrow Construction of the Statute Is Consistent with the Evidence of the Legislature's Intent</u>.

As a general principle of statutory interpretation, where a legislature "includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [the legislature] acts intentionally and purposely in the disparate inclusion or exclusion." *Gozlon-Peretz v. U.S.*, 498 U.S. 395, 404 (1991). However, this "argument should

not be elevated to the level of interpretive trump card." *Field v. Mans*, 516 U.S. 59, 67 (1995).

The Debtor argues that the narrow interpretation advocated by the Trustee would defeat the purpose of the exemption for public assistance benefits. In particular, the Debtor argues that the purpose of public assistance benefits and exemptions protecting them is to ensure low-income families have enough to meet their basic needs, and that it makes little sense not protect debtor' right to use such funds to meet such needs. *See In re Austin*, 2014 WL 3695370 (noting concern that if "the EIC benefit is to help low-income families meet their basic needs, it makes little sense not to protect the benefit once it is in the hands of a debtor" but finding that court had to follow the unambiguous mandates of the statute).

The exemption for public assistance benefits in Illinois is relatively recent and was added in reaction to the passage of the 1978 Bankruptcy Code. Illinois has enacted statutory exemptions for certain forms of personal property since at least the mid-Nineteenth Century. S*ee, e.g., Cook v. Scott*, 6 Ill. 333 (Ill. 1844), *In re Marriage of Logston*, 469 N.E.2d 167 (Ill. 1984) (predecessor to current personal property exemption adopted by Illinois legislature in 1843). However, by the time the Bankruptcy Code was enacted in 1978, Illinois' exemptions were relatively modest compared to the new set of federal exemptions contained in the new Bankruptcy Code. As of 1978, Illinois provided an exemption for personal property of:

(a) The necessary wearing apparel, bible, school books, and family pictures of every person; and
(b) For one year after the receipt thereof all money received by any resident of this State as a pension, adjusted or additional compensation or a bonus from the United States Government or from the State of Illinois on account of military or naval service, whether in the actual possession of such person, or deposited or loaned; and
(c) Three hundred dollars' worth of property, including money, and salary or wages due him, to be selected by the debtor, and, in addition, when the debtor is the head of a family and resides with the same, $700 worth of other property, to be selected by the debtor.
Money due the debtor from the sale of any personal property which was exempt

> from execution, writ of attachment or distress for rent at the time of such sale is exempt from attachment and garnishment to the same extent that such property would be exempt had the same not been sold by such debtor.

Ill. Rev. Stat. 1977, ch. 52, par.13. For over a hundred years, Illinois provided no exemption for public assistance benefits at all, right to future payment or received, other than a general $300 or $1,000 'wildcard' exemption.

The legislative history suggests the amendments in 1981 that added subsections (g) and (h) was at least partially in response to the more generous 522(d) federal exemptions. *Logston*, 469 N.E.2d at 173-74.[2] As stated by Senator Weaver, who introduced the bill, "last year we opted out of the Federal exemptions and reverted back to the old State exemptions and at ... at that time we stated that we would review our exemptions and come in at a later date with some liberalization of the old exemptions." S.B. 300, 82nd Ill. Gen. Assem., 1981 Sess., May 20, 1981, at 169.

The language in subsections (g) and (h) of the Illinois personal property exemption statute is taken nearly word for word from 11 U.S.C. § 522(d)(10) and (11).[3] The division between these two categories is not arbitrary. Instead, the legislative history for Section 522(d) refers to subsection (10) as exempting "certain benefits that are akin to future earnings of the debtor" while subsection (11) exempts "certain compensation for loss." HR Rep. No. 595, 95th Cong., 1st Sess. 361-362 (1977). It is not unusual – and certainly not absurd – that the exemptions for the two categories would be treated differently. *See, e.g., In re Kemp*, 2011 WL

---

[2] "A new Illinois exemption law, with similar provisions to the current § 12–1001, took effect on January 1, 1982. See P.A. 82–685, § 2. However, a legislative gaffe reinstated the former exemption provisions when the new Illinois Code of Civil Procedure was adopted effective July 1, 1982. This error was corrected with the repeal of the former exemption law and replacement with the newer, more generous version of § 12–1001 effective July 13, 1982. See P.A. 82–280, § 12–1001; P.A. 82–783, Art. III, § 43." *In re Johnson*, 57 B.R. 635, 641 n.10 (Bankr. N.D. Ill. 1986).

[3] Subsection (h) of the Illinois statute does not include subsection (E) of Section 522(d)(11). Also, some of the language originally taken from Section 522(d)(10)(E) was slightly abbreviated in subsection (g) of the Illinois statute, and later deleted in favor of a new separate section exempting retirement plans, 735 ILCS 5/12-1006, enacted by P.A. 86-393, § 1.

4434996 (Bankr. D.D.C. Spt. 22, 2011) (citing cases distinguishing Section 522(d)(10) and (11), and noting that "as a substitute for future wages ... Section 522(d)(10) was not intended to permit a debtor to exempt funds he received prepetition and found unnecessary to use to meet living expenses."). As explained in *In re Gonsalves*, Section 541(a)(6) excludes postpetition earnings of an individual debtor from the estate and "Congress intended Section 522(d)(10) to ensure that deserving debtors who are receiving non-wage benefits at the time they file for bankruptcy would receive the same treatment as debtors who are employed." 2010 WL 5342084 (Bankr. D. Mass. Dec. 21, 2010).

It is notable that section 12-1001(h), which expressly allows for tracing, also expressly limits the duration for which proceeds will be traceable. Similarly, the Illinois homestead exemption, while providing for an exemption of certain proceeds of sale, limits the exemption "for one year after the receipt thereof." 735 ILCS 5/12-906. The pre-1981 Illinois personal property exemption statute cited above included an exemption for proceeds of certain military pensions, but had a one-year limitation. If the Illinois legislature had intended to apply section 12-1001(g) to proceeds of benefits, one would expect that the legislature would have included a similar limitation.

The Debtor argues that a denial of the exemption in their case is unfair and presents an absurd outcome. In particular, he emphasizes the short period of time before the petition date and because they did not control when the refund payment was made. Unlike *Schoonover* where the debtor attempted to exempt $80,000 in various bank accounts that he had built up "over a period of years" through monthly social security, veteran's benefits and disability checks, here the debtor received an annual payment less than a month before the petition date. *Schoonover v. Karr*, 285 B.R. 695, 696 (S.D. Ill. 2002). However, as discussed above, the legislature had a

reasonable justification for drawing the line between exempt and non-exempt funds at receipt.

The Debtor complains that the tax credit they received is annual and therefore expected to provide for basic necessities for the upcoming year. But need alone is not authority for the courts to create exemptions the legislature has not provided for. Employed debtors who live month-to-month likely need wages that they receive until the next paycheck, but that alone does not make their wages received exempt property. *See, e.g., In re Jokiel*, 2012 WL 33246 (Bankr. N.D. Ill. Jan. 5, 2012) (finding that Illinois Wage Deduction Act not meant to be an exemption in part since "[o]nce the funds are in the hands of the debtor, creditors can collect on them through a citation proceeding or other form of process). It also must be noted here that the Illinois statute provides additional exemptions for basic necessities, such as the $4,000 'wildcard exemption.' 735 ILCS 5/12-1001(b).

The Debtor asserts that it is unfair to essentially punish the Freuhs for having received the tax refunds prepetition when it was in the control of the Internal Revenue Service's control. But Mr. Freuh does not suggest that they controlled the timing as to the filing of their voluntary Chapter 7 petition. Similarly, the Debtor does not contend that he was unable to anticipate the refund in advance of filing the return and his petition. Accordingly, the result here may well be unfortunate, but it is not punitive. While this court shares the concern over the "somewhat counterintuitive" result mandated by the statute expressed by Judge Gorman in *In re Austin*, 2014 WL 3695370 *2 (Bankr. C.D. Ill. July 24, 2014), it too does not find "absurd…the mandates of an unambiguous statute." *Id.*

## CONCLUSION

For the foregoing reasons, the Trustee's objection to the Debtor's claim of exemption will

be sustained. A separate order shall be entered giving effect to the determinations reached herein.

DATE:     September 30, 2014

ENTER:

_____
Thomas M. Lynch
United States Bankruptcy Judge